UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QI WANG,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD T. VALEIKA, et al.,<br><br>    Defendants. | Case No. 18-cv-02666-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY CASE**<br><br>Docket No. 11 |

## I. INTRODUCTION

Plaintiff Qi Wang ("Mr. Wang") is a citizen of China who is enlisted in the United States Army through the Military Accessions Vital to the National Interest ("MAVNI") program, which allows non-U.S. citizens who are not permanent citizens to join the armed forces if they possess critical foreign language skills or specialized medical training. MAVNI also provides an expedited path to citizenship for its participants. Mr. Wang submitted his naturalization application as required by the MAVNI program in early 2017, and has yet to receive a decision.

Mr. Wang brings the instant suit alleging that Defendants—the United States Department of Homeland Security ("DHS") and the United States Department of Defense ("DOD"), as well as officials within the two departments—have unlawfully put his citizenship application on hold, jeopardizing his career in the military and his immigration status. He seeks a writ of mandamus to compel DHS to immediately process his citizenship application, the same relief under the Administrative Procedure Act ("APA"), as well as declarative and injunctive relief. Mr. Wang further alleges that DOD has asked him to renounce his native citizenship from China and relinquish his Chinese passport, and seeks to equitably estop DOD from asking him to do so until his U.S. citizenship application is granted.

Defendants contend that there is a pending nationwide class action, *Nio v. United States Department of Homeland Security*, No. 17-cv-998 (ESH) (D.D.C. filed May 24, 2017), that encompasses Mr. Wang as a member and brings the same claims as Mr. Wang does here. Accordingly, Defendants request that the Court dismiss this case without prejudice or stay it pending a decision in *Nio*.

For the reasons stated below, the Court **DENIES** Defendants' motion to dismiss the case without prejudice, and **GRANTS IN PART AND DENIES IN PART** a stay of the case pending the resolution of *Nio*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The MAVNI Program

The *Nio* court provides the following description of the MAVNI program.

> Generally, enlistees in the United States Armed Forces must be either United States citizens or have legal permanent residence. *See* 10 U.S.C. § 504(b). However, under the MAVNI program . . . non-citizens who are not permanent residents, but who are lawfully present in the United States, may enlist if they have critical foreign language skills or specialized medical training. *See id.* § 504(b)(2) . . . .
>
> Generally, non-citizens who serve in the United States military during designated periods of hostilities are afforded an expedited path to citizenship. *See* 8 U.S.C. § 1440. Since September 11, 2001, such a period of hostilities has existed. *See* Exec. Order No. 13269, 67 Fed. Reg. 45, 287 (July 3, 2002). Thus, the MAVNI program not only gives non-citizens who are not lawful permanent residents the opportunity to enlist in the United States military, it also provides an expedited path to citizenship.
>
> An applicant for naturalization pursuant to 8 U.S.C. § 1440 must submit to [United States Citizenship and Immigration Services ("USCIS")] the standard Form N-400 naturalization application along with a USCIS Form N-426. DOD must execute the N-426, which certifies the applicant's qualifying military service. The N-426 indicates the applicant's dates of service and whether the applicant served "on active duty" or in the "Selected Reserve of the Ready Reserve. . . ." 8 C.F.R. § 329.2.
>
> Until recently, USCIS processed MAVNI naturalization applications in the same fashion as all other § 1440 applications, by following the generally-applicable requirements for naturalization, such as the FBI criminal background check, *see* 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3, as well as checking the Defense Clearance Investigative Index ("DCII") database to see if the "applicant has any derogatory information in his or her military records." Once these checks were

> completed, the applicant could be scheduled for an examination by a USCIS officer. 8 C.F.R. § 335.2. By statute, USCIS must adjudicate all naturalization applications within 120 days of completing the examination. 8 U.S.C. § 1447(b); 8 C.F.R. § 335.3. . . .
>
> [Until early 2017], USCIS adjudicated most of these applications in approximately 10 weeks' time.

*Nio v. United States Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 53–55 (D.D.C. 2017) (citations to the record in *Nio* omitted).

According to Mr. Wang's complaint, separate from the background checks conducted by USCIS in adjudicating MAVNI naturalization applications, the DOD conducts its own screenings and background checks on MAVNI recruits. Namely, "all MAVNI applicants have been required since 2012 to undergo an SSBI [Single Scope Background Investigation] and National Intelligence Agency Check ("NIAC")." Docket No. 1 (Compl.), ¶¶ 26–27. Mr. Wang alleges that "on September 30, 2016 DoD issued a memorandum requiring even deeper background investigations for all MAVNI applicants, namely a Counterintelligence Security ("CI-Security") review." *Id.* ¶ 28. The same memorandum

> also changed a key step in the [MAVNI] process. Prior to the issuance of the memorandum, MAVNI recruits could ship to Basic Combat Training while their SSBI investigations were processing. This memorandum barred MAVNI recruits from shipping to Basic Training until the completion of the SSBI investigations and the additional NIAC and CI-Security review.

*Id.* ¶ 29.

However, Mr. Wang alleges, "MAVNI recruits who cannot attend Basic Training within [two years][1] of their enlistment date are subject to discharge without characterization." *Id.* "An uncharacterized discharge . . . means that the individual would no longer be eligible to become a naturalized citizen under the MAVNI program." *Nio*, 270 F. Supp. 3d at 54. Indeed, as of September 2017, the *Nio* court was aware of "two instances [in which] MAVNI enlistees . . . received uncharacterized discharges despite having valid N-426s" because their eligibility to begin Basic Training had lapsed while their security screenings were pending, and were potentially

---

[1] As of July 2017, this time limitation "has been extended to three years, but this policy was not applied retroactively." *Nio*, 270 F. Supp. 3d at 57 n.13.

3

"subject to removal proceedings." *Nio*, 270 F. Supp. 3d at 57 n.13. An additional "four plaintiffs have lost their lawful immigration status during the delay and have no legal protection from removal and deportation proceedings." *Id.* at 63.

B.  Plaintiff Wang

Mr. Wang is a non-citizen who enlisted in the U.S. Army through the MAVNI program on December 17, 2015, and is serving in the Selected Reserve. Compl. ¶¶ 2, 9. Following the procedure set out in 8 U.S.C. § 1440, he obtained a Form N-426 certifying his honorable service in the Selected Reserve and submitted his Form N-400 application for naturalization, which was received by USCIS on February 9, 2017. *Id.* ¶ 33. He alleges that USCIS initiated the background check for his naturalization application on or about March 23, 2017. *Id.* ¶ 34. But as of the filing of his complaint, Mr. Wang has received "no indication when he will receive a USCIS examination for naturalization or when he will become a U.S. citizen," and "believes that his naturalization case is on hold pending the ongoing enhanced military background checks" mandated by DOD. *Id.* ¶ 37.

Because Mr. Wang enlisted in December 2015 and has yet to receive security clearance from DOD, he is fast approaching the three-year deadline for beginning basic training. He is therefore worried that "[a]t any time, [he] could receive an uncharacterized discharge, which would potentially disqualify him from naturalization, federal employment, and wreck his intended career in the U.S. Army." *Id.* ¶ 38.

Mr. Wang also alleges that "DoD's security and investigative arm, the Consolidated Adjudications Facility, has sought to have Plaintiff renounce his native citizenship from China," even though "there is no requirement to renounce the citizenship of one's native land before becoming a United States citizen." *Id.* ¶ 5. He fears that, if no determination is reached on his U.S. citizenship application and he has to relinquish his Chinese citizenship, he would be left in a "position of statelessness" and become an "'unauthorized immigrant,' since he must maintain a valid passport in order to maintain his visa status." *Id.* Mr. Wang thus asks the Court to equitably estop DOD from "seeking to have Plaintiff renounce his Chinese citizenship and relinquish the use of a Chinese passport until such time as Plaintiff is naturalized as a U.S. citizen." *Id.* ¶ 55.

4

Mr. Wang seeks: (1) a writ of mandamus to compel DHS to immediately process and expedite his naturalization application, (2) an order under 5 U.S.C. § 706(1) that compels the same, (3) an order equitably estopping Defendants from withholding adjudication of his application and from seeking to have him renounce his Chinese citizenship, and (4) declaratory and injunctive relief. Compl. ¶¶ 39–67.

C. <u>Plaintiffs' Allegations Regarding DOD and DHS</u>

Mr. Wang alleges that, since his enlistment in December 2015, DOD and DHS have implemented a number of changes to the MAVNI program and its attendant naturalization procedure that have resulted in his citizenship application being put on hold. First, as mentioned above, he claims a September 30, 2016 DOD memorandum imposed more stringent background check requirements on MAVNI recruits and barred them from beginning Basic Training until all of the checks were complete. Compl. ¶¶ 28–29; *see Nio*, 270 F. Supp. 3d at 53–54 ("As of September 30, 2016, DOD required that MAVNI enlistees complete an enhanced security screening before they can . . . qualify for active-duty status or ship to basic training.").

Second, he alleges that on or about February 28, 2017, USCIS headquarters "advised its field offices and service centers to hold certain naturalization applications for MAVNI recruits," followed up with a "written hold" on or about April 13, 2017 on the applications "until DoD background checks were completed." Compl. ¶ 30; *see also Nio*, 270 F. Supp. 3d 56 ("Beginning in early 2017, though, USCIS began to delay the processing of MAVNI N-400 applications pending the results of DODs enhanced security screening."); *id.* ("On July 7, 2017, [USCIS headquarters] . . . "provided 'final agency guidance' to the USCIS Field Offices in an email" directing that "all pending and future MAVNI cases may not proceed to interview, approval, or oath until confirmation that all enhanced DOD security checks are completed.").

A subsequent DOD guidance, not mentioned in Mr. Wang's complaint, was issued on October 13, 2017; it states that DOD "will recall and de-certify the Form N-426 for a Service Member" whose accession was prior to that date; had submitted a complete application for naturalization that USCIS has not yet adjudicated, or, if USCIS has granted such application, the member has not yet naturalized; and had not completed the enhanced DHS and USCIS security

5

screening. *See Nio v. United States Dep't of Homeland Sec.*, 323 F.R.D. 28, 31 (D.D.C. 2017). Without the Form N-426 certification, a MAVNI recruit's naturalization application would no longer be complete.

D.    *Nio* and Related Litigation

In *Nio*, the court certified as a nationwide class all persons who:

(i)   enlisted in the Selected Reserve through the MAVNI program before October 13, 2017;
(ii)  have served honorably in the U.S. military through participation in at least one Selected Reserve drill period or in an active-duty status;
(iii) have received from the U.S. military executed Form N-426s certifying their honorable service as members of the Selected Reserve or in active-duty status;
(iv)  have submitted N-400 naturalization applications to USCIS; and
(v)   have had the processing or final adjudication of their naturalization applications (including naturalization itself) withheld or delayed because of

    (a) a final USCIS processing hold for MAVNIs,
    (b) a DOD N-426 policy review,
    (c) a DOD N-426 recall/decertification policy,
    (d) enhanced DOD security screenings,
    (e) a DOD Consolidated Adjudications Facility ("CAF") adjudication,
    (f) a ... national security determination, and/or
    (g) a ... military service suitability vetting or determination.

*Nio*, 323 F.R.D. at 28. The class was certified under Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(2). *Id.*

The *Nio* plaintiffs brought multiple claims under the APA. With respect to the DHS and USCIS defendants, they first challenged "the addition of an enhanced security screening" to the MAVNI naturalization process as "contrary to law" under 5 U.S.C. § 706(2)(A) (requiring courts to hold unlawful agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") or 5 U.S.C. § 706(2)(C) (requiring courts to hold unlawful agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right")." *Nio*, 270 F. Supp. 3d at 63. Second, they argued that the addition was also arbitrary and capricious under 5 U.S.C. § 706(2)(A). *Id.* at 64. Third, they claimed that the enhanced screening requirement was a legislative rule that should have been subject to notice-and-comment procedures. *Id.* at 65. Fourth, they pressed that the adjudication of their naturalization

applications was "unreasonably delayed" under 5 U.S.C. § 706(1). *Id.* at 66. With respect to the DOD defendants, they challenged both DOD's position that "'active duty' service is required for the issuance of USCIS Form N-426," and its position that "it may revoke the N-426 forms it previously issued certifying plaintiffs' qualifying service." *Id.* at 53.

### III. DISCUSSION

A. Legal Standard

Defendants ask the Court to "decline to exercise jurisdiction over the Plaintiff's complaint as a matter of comity" and either dismiss the case without prejudice or stay it pending a resolution in *Nio*. Docket No. 11 at 5. "In the Ninth Circuit, the principles of federal comity are embodied in the 'first-to-file' rule." *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). The first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The purpose of the rule "is to promote efficiency and to avoid duplicative litigation." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citing *Alltrade*, 946 F.2d at 625).

A district court examines three factors in deciding whether to apply the rule: (1) the chronology of the two actions; (2) the identity of the parties involved; and (3) the similarity of the issues at stake. *Alltrade*, 946 F.2d at 625. The first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems*, 678 F.2d at 95. The district court retains "an ample degree of discretion" in making the determination. *Id.* (quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183–84 (1952)). Thus, the court may decline to apply the rule even if its three requirements are met. *See Alltrade*, 946 F.2d at 622. "[F]airness considerations and equitable concerns could bar the application of the rule," as can "demonstrations of prejudice." *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (citations omitted).

B.   Chronology of Actions

The *Nio* action was filed in the District Court for the District of Columbia on May 24, *Nio*, No. 17-cv-998 (ESH), Docket No. 1. Mr. Wang's complaint in this case was filed almost a year later, on May 7, 2018. *See* Docket No. 1. Thus, *Nio* was the first-filed case. *See EMC Corp. v. Bright Response, LLC*, No. C-12-2841 EMC, 2012 WL 4097707, at *2 (N.D. Cal. Sept. 17, 2012) ("The first factor requires that one action be filed prior to the other.").

C.   Similarity of Parties

The first-to-file rule "does not require strict identity of the parties, but rather substantial similarity." *Adoma*, 711 F. Supp. 2d at 1147 (E.D. Cal. 2010) (citing *Inherent.com*, 420 F. Supp. 2d at 1097). "In a class action, the classes, and not the class representatives, are compared." *Ross*, 542 F. Supp. 2d at 1020.

Defendants contend Mr. Wang falls within the *Nio* class definition, and asserts that he "was identified as one of approximately 1,332 *Nio* class members in the government's most recent report filed in the *Nio* class action on June 6, 2018." Docket No. 11 at 8. On its face, therefore, Mr. Wang is a member of the *Nio* class. That conclusion is corroborated by comparing Mr. Wang's complaint with the *Nio* class definition. He does not dispute that he meets all but one aspect of the definition: he enlisted in the Selected Reserve through MAVNI before October 13, 2017, *see* Compl. ¶ 32; he has served honorably through participation in at least one Selected Reserve drill period, *id.*; he has received a Form N-426 certifying his honorable service, *id.* ¶ 33; and he has submitted a Form N-400 naturalization application to USCIS, *id.*

Mr. Wang contests only that he does not fall within the final part of the class definition, and is therefore not in the *Nio* class, because he has not "had the processing or final adjudication of [his] naturalization application[] . . . withheld or delayed because of" one of the specified reasons.[2] *See* Docket No. 20 at 3–4; *Nio*, 323 F.R.D. at 28. Mr. Wang argues that the class definition does not apply to him because DOD has already "completed its background checks on [him]." Docket No. 20 at 3. Mr. Wang draws the conclusion that his DOD background checks are

---

[2] In contrast, Defendants assert that Mr. Wang "has had the final adjudication of his naturalization application delayed due to DoD's enhanced security screenings." Docket No. 11 at 8.

complete from a more recent Form N-426, not referenced in his complaint but attached as an exhibit to his opposition brief. This form appears to show that the certifying official from the U.S. Army, in the section asking for "any derogatory information . . . relating to the service member[]," wrote: "Derog—Received by DOD/CAF; Pending DOD CAF Adjudication / currently seeking political asylum in U.S." Docket No. 20, Exh. C at 4. This annotation is accompanied by a signature and a date of January 11, 2018. *Id.* According to Mr. Wang, "[t]he fact that DOD/CAF"—the "entity that completes DOD background checks"—"has uncovered 'derogatory information' indicates that DOD/CAF has completed its background check." Docket No. 20 at 3.

Mr. Wang has not cited any authority to support his assertion that the uncovering of "derogatory information" indicates that DOD has completed its background checks. Indeed, the annotation on the Form N-426 on which he relies expressly states that his application is "pending DOD CAF Adjudication"—a specific ground for class inclusion. In any event, even if it were presumed that his DOD background check has been completed, it may be inferred that the delay is due to "a final USCIS processing hold for MAVNIs," another basis for class membership. *Nio*, 323 F.R.D. at 28; *see* Docket No. 20 at 3 ("[T]here is therefore no reason for USCIS to delay adjudication of SPC Wang's N-400.").

DHS, USCIS, DOD, and their officials are named as defendants in both cases.[3] There is, therefore, a substantial similarity in the parties between this case and *Nio*.

D. <u>Similarity of Issues</u>

For the first-to-file rule to apply, the issues in both cases "need not be identical, only substantially similar." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Thus, the court "look[s] at whether there is 'substantial overlap' between the two suits." *Id.* at 1241.

In this case, Mr. Wang seeks to "obtain mandamus, Administrative Procedure Act,

---

[3] Defendants here argue that Mr. Wang, in his opposition to the motion to dismiss, "appears to abandon any claims for relief against DoD and James Mattis, Secretary of Defense." Docket No. 21 at 1 n.1. But Defendants appear to be referring to an outdated filing, which Mr. Wang superseded with a corrected filing later the same day. *See* Docket No. 19 (original filing); Docket No. 20 (corrected filing). In the corrected filing, Mr. Wang makes clear that he "has sued the DOD and General Mattis." Docket No. 20 at 6.

equitable estoppel, declaratory, preliminary and permanent injunctive relief to compel and enjoin defendants to comply with their statutory obligations to allow for Plaintiff's naturalization application to be processed as required by law." Compl. ¶ 6. In *Nio*, the class is requesting "Administrative Procedure Act ("APA"), mandamus, declaratory, due process, and temporary, preliminary, and permanent injunctive relief to compel and enjoin Defendants so that they comply with their obligations pursuant to the Constitution and the mandates and directions specified in federal law . . . to properly and timely act upon, and to otherwise cease interfering with, the processing of Plaintiffs' naturalization applications." *Nio*, No. 17-cv-998 (ESH), Docket No. 61 ¶ 10 (Second Amended Complaint).

Thus, '[t]he resolution of the claims in both cases will turn on similar determinations of fact in an effort to answer the same central question": whether Defendants violated their statutory obligations in imposing additional requirements and holds on the plaintiffs' naturalization applications. *Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014); *see Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791–92 (6th Cir. 2016) (finding two actions sufficiently similar where both "raise the same claims arising under the same laws using the same theory of the case" and seek the same forms of relief).

Mr. Wang argues that this case and *Nio* are not similar because he "has not sought systemic change but individual relief" of the "individual wrong done to him by *these* Defendants." Docket No. 20 at 6–7 (emphasis in original). But courts have frequently found substantial overlap between two cases where they "are proceeding on similar, although not identical . . . theories of relief." *Clardy v. Pinnacle Foods Grp., LLC,* No. 16-CV-04385-JST, 2017 WL 57310, at *3 (N.D. Cal. Jan. 5, 2017); *see, e.g.*, *id.* (finding similarity of issues because both actions allege the same wrongdoing); *Adoma*, 711 F. Supp. 2d at 1148–49 (concluding that two class actions were similar because "the underlying legal issues were the same" even though the second-filed action included "an additional unpaid overtime theory"); *Jumapao v. Washington Mutual Bank*, No. 06–CV–2285, 2007 WL 4258636, *2–3 (S.D. Cal. Nov. 30, 2007) (finding that two class actions substantially overlapped where both asserted claims under the same federal and state labor laws such that they both required resolution of the same legal questions, even though other claims

10

differed). As explained above, the operative facts, alleged statutory violations, and key legal questions underlying the claims relating to the MAVNI naturalization process in this case and *Nio* are essentially the same, and thus the two suits substantially overlap.

Mr. Wang relies on *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013), in arguing that the individual remedies he seeks are not duplicative of the "systemic change" that is the object of the *Nio* class action. Docket No. 20 at 6. But *Pride* is inapposite to Mr. Wang's MAVNI naturalization claims because there, the incarcerated plaintiff brought "an independent claim for injunctive relief solely on his own behalf for medical care that relates to him alone," which had been prescribed pursuant to a personal diagnosis and was being withheld by the prison. *Pride*, 719 F.3d at 1137. This was in contrast to the pending class action, which required prisons to "implement various systemic changes such as increasing medical staff and implementing protocols for the transfer of inmates between prisons" but did not "address[] conclusively" whether "individual inmates [could] seek injunctive relief related to individualized medical treatment." *Id.* at 1136. Thus, *Pride* found "no duplication of claims." *Id.* at 1137. Unlike in *Pride*, the *Nio* class conclusively addresses the particular individual relief that Mr. Wang requests here: the immediate processing of the naturalization application of each class member. If the class prevails, Mr. Wang would obtain the precise relief he seeks.

However, *Pride* does speak to the one claim Mr. Wang presses that is factually and legally distinct than those covered by the *Nio* class. He alleges that DOD "has sought to have Plaintiff renounce his native citizenship from China," which would "leave [him] in a position of statelessness" if his U.S. citizenship application is not adjudicated. Compl. ¶ 5. Mr. Wang asks the Court to equitably estop DOD from "seeking to have Plaintiff renounce his Chinese citizenship and relinquish the use of a Chinese passport until such time as Plaintiff is naturalized as a U.S. citizen." *Id.* ¶ 55. While there is some contextual overlap between this issue and *Nio*, since the alleged pressure put on Mr. Wang to renounce his Chinese citizenship occurred in the course of his application for naturalization, the *Nio* plaintiffs have not made allegations or sought relief in this vein. Thus, this claim does not fall squarely within the coverage of the first-to-file rule. *See Pride*, 719 F.3d at 1137 (rejecting contentions that "a discrete, individual claim for . . . relief may

11

be delayed because a pending class action seeks systemic reform relating to the same general subject matter"); *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (holding that "dismissal of those portions of the complaint which raise issues not covered by the [first-filed] class action" is not appropriate).

Because Mr. Wang's citizenship application claims substantially overlap with the claims in *Nio*, it is appropriate under the first-to-file rule for this Court to defer to the *Nio* court in adjudicating those claims. However, the Court recognizes that Mr. Wang's claims related to the renunciation of his Chinese citizenship are not directly before the *Nio* court, and also notes his concern that his claims in general are pressing because he is approaching the three-year mark in his enlistment and continued delays in the adjudication of his N-400 application mean his "right to stay and work in the United States is compromised." Docket No. 20 at 7.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay the case is **GRANTED IN PART**. The Court stays all claims except that related to the DOD's alleged demand that Mr. Wang renounce his Chinese citizenship. As to the other claims which overlap with *Nio*, the stay is issued without prejudice to Mr. Wang seeking exigent relief if appropriate.

Additionally, the parties are **ORDERED** to meet and confer regarding the possibility of a stipulation to preserve Mr. Wang's status quo in the MAVNI program pending the adjudication of *Nio*. The parties are further **ORDERED** to communicate with class counsel in *Nio* to determine whether Defendants in that case have provided any assurances as to the status of the class members.

This order disposes of Docket No. 11.

**IT IS SO ORDERED**.

Dated: September 14, 2018

_____
EDWARD M. CHEN
United States District Judge

12